IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| V. | § | NO. 1:17-CR-149 |
| | § | |
| WAYNE EGINS, JR. | § | |

**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE
JUDGE ON THE DEFENDANT'S MOTION TO SUPPRESS EVIDENCE**

Pending before the undersigned is a "Motion to Suppress" (Doc. No. 22) filed by the Defendant, Wayne Egins, Jr. ("Egins").[1] The United States filed a response to the Defendant's motion (Doc. No. 25), and the undersigned magistrate judge heard testimony and oral argument on March 21, 2018. The undersigned finds that the search and seizure were lawful. Accordingly, the undersigned recommends denying Egins' "Motion to Suppress."

**I. RELEVANT FACTS**

During the hearing on the instant motion held on March 21, 2018, Detective Michael Roberts ("Roberts") and Detective Ronnie Freeman ("Freeman") with the Narcotics and Vice Division of the Beaumont Police Department testified to the following facts and supporting exhibits: on December 27, 2016, at approximately 8:30 p.m., Roberts was conducting surveillance of a suspected drug house on Elder Street in Beaumont, Texas. At 8:58 p.m., Roberts saw a green Saturn Ion car driven by Egins leave the location. Freeman, who was working in conjunction with Roberts, began to follow Egins on Cleveland Street in an unmarked grey Nissan SUV. Freeman observed Egins turn on his

---

[1] This motion is referred to the undersigned United States magistrate judge for review, hearing if necessary, and submission of a report with recommended findings of fact and conclusions of law. *United States v. Raddatz*, 447 U.S. 667, 681-84 (1980); *see also* 28 U.S.C. § 636(b)(1)(B) and Local Rule CR-59(a).

turn signal only 10-15 feet before the stop sign to take a left on Fillmore Street. Freeman testified that Egins committed a traffic violation because he failed to signal 100 feet before the turn. Freeman used his police radio to notify another officer in the area of the violation–Officer Kelly Kvarme ("Kvarme").

Kvarme, in a marked patrol car, then began to follow Egins and Freeman, but Freeman continued straight instead of turning on Fillmore to follow Egins. According to a dash cam video (located in Kvarme's patrol car), corroborated by Kvarme's testimony in court, while following Egins on Fillmore Street, he observed Egins veer to the left side of the street and then drive through the intersection of Fillmore Street and Ironton Avenue on the wrong side of the road. (*See* Govt. Ex. 9.) Kvarme then activated his lights and Egins veered back to the right side of the road and almost struck a parked truck before stopping at the next intersection. (*Id.*) Kvarme testified that driving on the wrong side of the road and also traveling on the left side of the road within 100 feet of an intersection are both traffic violations.

Kvarme activated his emergency lights, and Egins pulled over. As he approached the vehicle, Kvarme noticed an odor of marijuana, and when he asked Egins for his driver's license, Egins stated, "you might as well put me in handcuffs." Upon exiting the vehicle, Kvarme noticed in plain view a digital scale commonly used in the distribution of illegal narcotics. (Govt. Ex. 3.) Egins also voluntarily told the officers that there was "weed" in the car. Kvarme and his partner then performed a search of Egins' car and discovered synthetic marijuana, marijuana, methamphetamine, and a loaded .40 caliber firearm. (*See* Govt. Exs. 4-8.) On December 6, 2017, Egins was charged in a two-count indictment for possession of a Schedule II controlled substance (methamphetamine) and possession of a firearm in furtherance of a drug trafficking crime. (Doc. No. 2); 21 U.S.C. §

841(a)(1); 18 U.S.C. § 924(c).

In his motion, Egins asks to suppress all the evidence seized as a result of a violation of his rights under the Fourth and Sixth Amendments of the United States Constitution. (Doc. No. 22.) Specifically, Egins argues the traffic stop was an unreasonable seizure because it was not based upon a reasonable suspicion that Egins committed a traffic violation.

## II. RELEVANT LAW AND DISCUSSION

The Fourth Amendment protects individuals from unreasonable searches and seizures. Traffic stops are considered seizures within the meaning of the Fourth Amendment. *Delaware v. Prouse*, 440 U.S. 648, 653 (1979). Because traffic stops are considered more similar to investigative detentions than formal arrests, the legality of traffic stops for Fourth Amendment purposes is analyzed under the standard articulated in *Terry v. Ohio,* 392 U.S. 1 (1968). *Terry* requires that courts apply a two-step "reasonable suspicion" inquiry to:

1) determine whether the officer's action was justified at its inception, and

2) determine whether the search or seizure was reasonably related in scope to the circumstances that justified the stop in the first place.

*United States v. Zamora*, 661 F.3d 200, 204 (5th Cir. 2011). The government bears the burden of establishing the two elements under *Terry* by a preponderance of the evidence. *United States v. McMahan*, No. 3:07-CR-152, 2007 WL 2470999, at *4 (N. D. Tex. Aug. 30, 2007) (citing *United States v. Sanchez-Pena*, 336 F.3d 431, 437 (5th Cir. 2003)).

### A.     **First Prong of Terry**

In *United States v. Lopez-Moreno*, 420 F.3d 420, 430 (5th Cir. 2005), the Fifth Circuit succinctly explained the first prong of *Terry*:

> For a traffic stop to be justified at its inception, an officer must have an objectively reasonable suspicion that some sort of illegal activity, such as a traffic violation, occurred, or is about to occur, before stopping the vehicle. *See United States v. Breeland*, 53 F.3d 100, 102 (5th Cir. 1995). The Supreme Court has stated that in making a reasonable suspicion inquiry, a court "must look at the 'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing." *United States v. Arvizu*, 534 U.S. 266, 273. We have stated previously that reasonable suspicion exists when the officer can point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the search and seizure. *See, e.g., United States v. Santiago*, 310 F.3d 336, 340 (5th Cir. 2002). In evaluating the totality of the circumstances, a court may not consider the relevant factors in isolation from each other. *Arvizu*, 534 U.S. at 274. In scrutinizing the officer's basis for suspecting wrongdoing, it is clear that the officer's mere hunch will not suffice. *Terry*, 392 U.S. at 27. It is also clear, however, that reasonable suspicion need not rise to the level of probable cause. *Arvizu*, 534 U.S. at 274.

The Fifth Circuit has held that even a minor violation can justify a traffic stop. *See, e.g. Zamora*, 661 F.3d at 204 (holding that a missing front license plate and cancelled rear license plate provides police with reasonable suspicion)*; United States v. Summers*, 108 F. App'x 192, 193 (5th Cir. 2004) (holding that the district court did not err in holding a traffic stop was justified by believing the testimony of the arresting officer who stopped the vehicle because of the driver's failure to signal before turning).

### 1. Texas Transportation Code § 545.104(b) - Signaling Turns

In this case, Freeman testified that he observed Egins fail to signal his intent to turn onto Fillmore Street 100 feet prior to his turn, which is a violation of Texas Transportation Code § 545.104(b). That section states:

> (b) An operator intending to turn a vehicle right or left shall signal continuously for not less than the last 100 feet of movement of the vehicle before the turn.

Consequently, the court must determine whether, objectively, Freeman had a reasonable suspicion that some sort of illegal activity–in this instance a violation of a Texas traffic regulation–occurred or was about to occur, before stopping Egins' vehicle. *See United States v. Coronado*, 480 F. Supp. 2d 923, 927 (W.D. Tex. 2007) (citing *United States v. Lopez-Moreno*, 420 F.3d 420, 430 (5th Cir. 2005)).

Egins argues that *Kvarme* could not have known his distance from the stop sign when he initially signaled his intent to turn, because of the distance between the two vehicles and because there was a car between himself and *Kvarme* at the time of the alleged violation. However, as shown by the Government, it was *Freeman* that viewed this particular traffic violation. He was directly behind Egins at the time of the violation, and Freeman relayed this information to Kvarme.[2] Thus, under the "collective knowledge doctrine," Kvarme did not need to form his own reasonable suspicion as long as Freeman possessed the requisite reasonable suspicion to make the stop. *United States v. Ibarra-Sanchez,* 199 F.3d 753, 759-60 (5th Cir. 1999) (finding shared communication and knowledge among more than one officer can collectively amount to reasonable suspicion under the "collective knowledge doctrine").

Egins relies on *United States v. Alvarez*, 782 F.3d 246, 250 (5th Cir. 2015) regarding the validity of this traffic violation. In *Alvarez*, the defendant made a left lane change then a left turn, and the officer alleged the same traffic violation as discussed above. *Alvarez*, 782 F.3d at 248. The officer believed that the lane change was to effectuate the turn, so it was all one turn. *Id.* The court disagreed and found that this traffic statute only applies to turns–not lane changes. *Id.* at 249.

---

2. At the hearing, Freeman explained that his vehicle was not equipped with a recording device, because it was a leased, undercover vehicle.

Consequently, the Government alleged a reasonable mistake of law, but the Fifth Circuit agreed with Alvarez that the officer's mistake of law was not reasonable. *Alvarez*, 782 F.3d at 250. In addition, the defendant brought an expert that testified that the defendant signaled at 300 feet prior to his actual turn according to the video and measurements taken, and the Government alleged this was a reasonable mistake of fact by the officer. *Id.* The court found that taken as a whole, the officer's testimony did not provide the sort of specific, articulable facts which would allow a court to determine that he possessed a reasonable suspicion that the defendant had committed a traffic violation. *Id.* at 251. Instead, the officer's only support for the violation was his conclusory statements. *Id.*

In this case, Freeman was not mistaken about the law, nor was there controverting testimony or evidence that Egins *did* signal his intent to turn prior to reaching 100 feet from the intersection. Freeman testified that Egins was a mere 10-15 feet from the stop sign, which is well within 100 feet as required by the statute. Consequently, the instant case is distinguishable from *Alvarado-Zarza*. The undersigned finds that the Government showed sufficient articulable facts to support a finding that Egins failed to signal his intent to turn at least 100 feet prior to the intersection in violation of the Texas Transportation Code, including Freeman's testimony and the video. Accordingly, there was reasonable suspicion to stop Egins' vehicle.

*2. Texas Transportation Code §§ 545.051, 545.056(a)(1) - Driving on Right Side of Roadway and Driving to Left of Center of Roadway*

In addition, the Government asserts that Officer Kvarme had reasonable suspicion that Egins violated sections 545.051 and 545.056 of the Texas Transportation Code, which state:

> **§ 545.051. Driving on Right Side of Roadway**
> (a) An operator on a roadway of sufficient width shall drive on the right half of the

>roadway, unless:
>>. . .
>>(2) an obstruction necessitates moving the vehicle left of the center of the roadway and the operator yields the right-of-way to a vehicle that:
>>>(A) is moving in the proper direction on the unobstructed portion of the roadway; and
>>>(B) is an immediate hazard; . . .
>
>**§ 545.056. Driving to Left of Center of Roadway: Limitations Other Than Passing**
>(a) An operator may not drive to the left side of the roadway if the operator is:
>>(1) approaching within 100 feet of an intersection or railroad grade crossing in a municipality; . . .

Kvarme testified that Egins veered his vehicle to the left side of Fillmore Street and continued on the left side of the roadway through the intersection of Fillmore Street and Ironton Avenue. Egins states in response that there was a parked vehicle obstructing the right side of the road, so that excuses his driving to the left of the center of the roadway. The Government points out that the parked vehicle was on the other side of the intersection a block away from the point at which Egins veered to the left side of the roadway. The dash cam video and Kvarme's testimony support the Government's position. Furthermore, the evidence shows that Egins drove through the actual intersection while on the left side of the roadway. This clearly violates section 545.056 of the Transportation Code, as he was obviously well within 100 feet of the intersection. Consequently, there were specific and articulable facts that led to reasonable suspicion that Egins violated these statutes as well, making the stop of Egins' vehicle lawful.

>**B.    Second Prong of Terry**

Under the second prong of the *Terry* test, the relevant question is whether the officer's actions, after he legitimately stopped Egins' vehicle, were *reasonably related* to the circumstances that justified the stop. *United States v. Brigham*, 382 F.3d 500, 507 (5th Cir. 2004). Generally, the

"detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop. . . ." *Id.* In the course of effectuating the stop, a police officer may permissibly examine the driver's license and registration and run a computer check on the occupants to investigate whether the driver has any outstanding warrants or if the vehicle is stolen. *Id.* at 507–08. An officer may also ask the driver about the purpose and itinerary of his trip. *Id.* at 508.

Once all relevant computer checks have come back clean, there is no longer reasonable suspicion, and, as a general matter, continued questioning thereafter unconstitutionally prolongs the detention. *Id.* at 510; *see also United States v. Jones*, 234 F.3d 234, 241(5th Cir. 2000). A recognized exception to this rule is that if additional reasonable suspicion arises in the course of the stop and before the initial purpose of the stop has been fulfilled, then the detention may continue until the new reasonable suspicion has been dispelled or confirmed. *See Brigham*, 382 F.3d at 507; *United States v. Grant,* 349 F.3d 192, 196 (5th Cir. 2003).

In this case, there were several factors to justify Egins' continued roadside detention. Initially, Kvarme noticed an odor of marijuana, and Egins voluntarily stated, "you might as well put me in handcuffs." (Govt. Ex. 9.) Kvarme then asked Egins to exit the vehicle, and Kvarme saw a digital scale in plain view, which is commonly used to weigh illegal narcotics. Egins again made a voluntary statement that there was "weed" in the car. Based upon these facts, there was ample grounds for Kvarme's reasonable suspicion that Egins was involved in criminal activity and justified his continued detention. Furthermore, these facts gave rise to probable cause to search Egins' vehicle. *See United States v. Castelo*, 415 F.3d 407, 412 (5th Cir. 2005) ("probable cause to search an automobile exists where trustworthy facts and circumstances within the officer's personal knowledge would cause a reasonably prudent man to believe that the vehicle contains contraband.")

(internal citations omitted); *see also United States v. McSween*, 53 F.3d 684, 686–87 (5th Cir. 1995) (citing a collection of Fifth Circuit cases holding that the smell of marijuana alone is grounds for a finding of probable cause to search the entire vehicle). Accordingly, the undersigned finds that Egins' roadside detention was lawful, reasonably related to the circumstances that justified the stop, properly continued until the new reasonable suspicion of criminal activity that arose right after the stop was confirmed, and the evidence obtained was based upon probable cause to search the vehicle. *See id.; Brigham,* 382 F.3d at 507.

### III. RECOMMENDATION

The undersigned finds that there was reasonable suspicion to the stop Egins' vehicle, and the following detention, search and seizure were also lawful. Consequently, it is recommended that the district court deny the Defendant's Motion to Suppress.[3] (Doc. No. 22.)

### IV. OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1)(c) (Supp. IV 2011), each party to this action has the right to file objections to this report and recommendation. Objections to this report must (1) be in writing, (2) specifically identify those findings or recommendations to which the party objects, (3) be served and filed within fourteen (14) days after being served with a copy of this report, and (4) no more than eight (8) pages in length. *See* 28 U.S.C. § 636(b)(1)(c); FED R. CIV. P. 72(b)(2); Local Rule CV-72(c). A party who objects to this report is entitled to a *de novo* determination by the United States

---

3. Although Egins only focused on tangible evidence in his Motion to Suppress, based upon questions from the undersigned at the hearing, Egins asserted for the first time that his statements made to the officers after he was arrested should also be suppressed. Because he failed to move on this ground in his motion, it was not addressed at the hearing. Nevertheless, the statements made by Egins with regard to putting him in handcuffs and having "weed" in the car were made voluntarily–not as a result of interrogation, and are therefore admissible. *Pilcher v. Estelle*, 528 F.2d 623, 624–25 (5th Cir. 1976). None of Egins' statements as a direct result of questioning were discussed in the parties' motion or response or admitted at the hearing.

District Judge of those proposed findings and recommendations to which a specific objection is timely made. *See* 28 U.S.C. § 636(b)(1)(c); FED R. CIV. P. 72(b)(3).

A party's failure to file specific, written objections to the proposed findings of fact and conclusions of law contained in this report, within fourteen (14) days of being served with a copy of this report, bars that party from: (1) entitlement to de novo review by the United States District Judge of the findings of fact and conclusions of law, (*see Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988)), and (2) appellate review, except on grounds of plain error, of any such findings of fact and conclusions of law accepted by the United States District Judge. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).

SIGNED this 9th day of April, 2018.

_____
Zack Hawthorn
United States Magistrate Judge

10